UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RITA R JOHNSON,

        Plaintiffs,                              Case No. 17-cv-12405

v                                                  Honorable Thomas L. Ludington

TIMOTHY MORALES, et al,

        Defendants.
_____/

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND ALTERNATIVELY FOR A PRELIMINARY INJUNCTION

On July 25, 2017, Plaintiff Rita R. Johnson filed a complaint alleging that Defendants Timothy Morales, Dennis Jordan, and the City of Saginaw violated her due process rights when they suspended her business license. Compl., ECF No. 1. On August 1, 2017, the parties submitted a stipulated proposed order requesting the Court adjourn the administrative deadline for Johnson to appeal the suspension of Johnson's business license. The Court declined to enter the order because the Court lacked authority to extend an appeal deadline in a separate administrative proceeding. ECF No. 4. On August 23, 2017, Johnson filed an amended complaint which provides additional factual allegations and contains an additional count alleging that Defendants violated her Fourth Amendment due process rights. ECF No. 5. An attorney for Defendants has filed an appearance, but Defendants have not been served with either the original or amended complaint.

On September 9, 2017, Johnson filed a motion for a temporary restraining order and, alternatively, a motion for a preliminary injunction. ECF No. 7.[1] Johnson explains that Timothy Morales, the City Manager who issued the original "shutdown order," will be a member of the panel hearing Johnson's appeal. Johnson contends that her due process rights will be violated if the appeal is heard by the same person who originally suspended her business license. For the reasons that follow, Johnson's motion will be denied.

I.

At this stage, the well-pleaded factual allegations in Johnson's complaint will be assumed to be true. Johnson owns and operates Rita's Southern Soul Café in Saginaw, Michigan. Am. Compl. at 1. Defendant Timothy Morales is the Saginaw City Manager. Defendant Denis Jordan is the City of Saginaw's Human Resource Director.

On May 6, 2017, Johnson rented out the cafe to a private party. *Id.* at 2. In the early morning hours of May 6, 2017, unknown individuals "emerged from a vehicle . . . and began shooting at Plaintiff's building." *Id.* To her knowledge, Johnson's guests did not commit any crime during the assault and Johnson herself has no connection to any of the shooters.

The Saginaw Police Department responded to the shooting. Police Chief Robert Ruth later opined that the incident was likely gang-related. *Id.* at 3. Johnson faults the City of Saginaw for not ordering "the criminal shooters to halt their illegal activities." *Id.* at 4. Instead, in reaction to the shooting, the City of Saginaw took action against Johnson:

> Rather than focus efforts on apprehending and stopping the unknown gang-members who *actually* acted illegally and unlawfully, Defendant CITY OF SAGINAW, likely in an attempt to shift blame from its poorly-staffed and ineffective police department, took adverse action against Plaintiff by suspending

---

[1] Immediately after filing the motion for a temporary restraining order or preliminary injunction, Johnson filed an amended motion for a temporary restraining order. The amended motion corrects a scrivener's error in the title of the original motion. Because the original motion has been superseded, it will be denied as moot.

> her business license for actions for which she is not responsible and for alleged crimes she did not otherwise commit or authorize

*Id.* (emphasis in original). The City of Saginaw also turned off Johnson's water supply "without notice or authority in a backhanded way to shut down Plaintiff's commercial operations." *Id.*

The administrative appeal process for challenges to the suspension of business licenses is governed by the City of Saginaw Code of Ordinances, 110.06(E). Pursuant to 110.06(F), if "the City Manager or their designee" determines that an immediate suspension of a business license is necessary, they may unilaterally order an immediate suspension. But the City Manager or their designee must hold a hearing within five days to allow the license holder to challenge the suspension. *Id.* On May 8, 2017, Timothy Morales "issued a governmental order entitled *Notice of Immediate Suspension of Business Activity* whereby he, as an agent of Defendant CITY OF SAGINAW, ordered the halt of <u>all</u> (and not just illegal) activities, including all commercial activities of any type." Am. Compl. at 4. (emphasis in original). Johnson alleges that the shutdown order was intended to destroy Johnson's commercial interests.

Pursuant to the governing city ordinance, a hearing on the suspension was scheduled for May 11, 2017. Denis Jordan was designated as the hearing officer. According to Johnson, Timothy Morales is the immediate supervisor of Defendant Jordan. The hearing was held as scheduled, but Johnson alleges that Jordan "allowed hearsay testimony, dubious evidence, and irrelevant testimony." *Id.* at 4. Johnson highlights two examples of misconduct during the hearing. First, Johnson asserts that the City of Saginaw was represented at the hearing by a firm which had previously represented Jordan. *Id.* Despite this connection, Jordan did not recuse himself from the hearing. Second, Jordan permitted Police Chief Ruth to testify about the events of May 6, 2017, even though he had not been present at the scene or ensuing investigation.

Two months after the hearing, Jordan denied the appeal. *Id.* at 6. While Jordan was considering the appeal, Johnson's counsel asked "how the City could have a Human Resources Director serve as a neutral, detached decision maker and how it could allow hearsay and conjecture as evidence in such a hearing." *Id.* at 5. In response, counsel for the City suggested that because it was only an administrative hearing that level of due process was not required. *Id.* Johnson's counsel then submitted a number of Freedom of Information Act Requests seeking information regarding the City's processes and procedures. *Id.*

On July 11, 2017, "City Attorney Amy Lusk introduced a proposal to the City of Saginaw City Council to amend the City Ordinance permitting the appointment of employees of the City of Saginaw as the hearing officer to conduct hearings like the one undertaken against Plaintiff." *Id.* The update to the City Ordinance has been approved.

In her complaint, Johnson frames four Counts which all allege that her Fourth Amendment due process rights were violated. In Count I, Johnson contends that Dennis Jordan was not a neutral and detached arbiter because he was reviewing his supervisor's actions. In Count II, Johnson argues that her "constitutionally protected right of property" was violated when the City of Saginaw suspended her business license without providing a pre-suspension hearing. In Count II, Johnson argues that the City Ordinance which requires a public hearing after license suspension is unconstitutional because it places the burden of demonstrating why the license should not be suspended on Johnson. In Count IV, Johnson argues that her due process rights will be violated if Timothy Morales is permitted to sit on the three-person panel which will review Jordan's decision.

**II.**

Federal Rule of Civil Procedure 65 provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if two requirements are satisfied: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Four factors govern whether the Court will issue a temporary restraining order (the same four factors governing whether to issue a preliminary injunction): (1) whether the plaintiff has demonstrated a substantial likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would harm others; and (4) whether the public interest is served by granting injunctive relief. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (citation omitted); *see also Ne. Ohio Coal. for Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).

## III.

In her motion, Johnson requests a temporary restraining order and/or preliminary injunction preventing Defendant Morales from appearing on the panel which will hear Johnson's appeal. Pursuant to 110.06(E)(1), "[a]ny party dissatisfied with the decision of the City Manager or other appropriate Hearing Officer or body shall have a right to appeal the decision." The appeal request must be filed within fourteen days after notice of the suspension, and the hearing

must be scheduled within ten days of receipt of the appeal. That appeal hearing will take place before a "panel consisting of the City Manager or their designee, the affected department head or their designee, and the City Clerk or their Designee." *Id.* at 110.06(E)(2). "A party aggrieved by the order or decision of the appeal panel may appeal the decision to a court of competent jurisdiction as provided by state statutes and court rules." *Id.* at 110.06(E)(4).

Here, Morales exercised his discretionary authority to suspend Johnson's business license. The immediate appeal of that decision was reviewed by Jordan. Johnson's next step is to appeal Jordan's denial of her appeal to the three-person appeal panel defined in 110.06(E)(2). The parties have agreed to postpone the deadline to request the appeal panel review until September 24, 2017. Party Stipulation, ECF No. 7, Ex. 4. Johnson thus requests a decision on her motion for a temporary restraining order and/or motion for a preliminary injunction on or before that date. There is no justification for preliminary injunctive relief here, and so Johnson's motion will be denied.

**A.**

Johnson first argues that a temporary restraining order is necessary because there is a strong likelihood of success on the merits of her claim. Specifically, Johnson argues that "[f]ederal law is clear that such a process is facially illegal if it allows a person to ultimately review his or her own decision—he is not a neutral and detached decisionmaker." Mot. Temp. Res. at 11, ECF No. 7. But upon review of the law and Johnson's allegations, it is clear that no violation of federal law will occur if Morales appears on the appeal panel.

Johnson argues that the City Ordinance's procedures violate due process because they do not involve a neutral and detached arbiter. *See Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (explaining that the "minimum requirements of due process" in the parole revocation context

include a neutral and detached hearing body). It is well settled that due process protections apply "to administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin*, 421 U.S. 35, 46 (1975). The Supreme Court has held that when the adjudicator has "a pecuniary interest in the outcome" or "has been the target of personal abuse or criticism from the party before him," the "probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* at 47.

In *Withrow*, the district court granted a preliminary injunction which prevented the state medical examining board from adjudicating the suspension of a doctor's license because the board had investigated the charges in question and thus would be reviewing its investigative decision. *Id.* at 46. The Supreme Court held that the issuance of the preliminary injunction was an abuse of discretion:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry [than the argument that pecuniary interest or personal criticism creates bias]. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* at 47.

The Court held that "[t]he initial charge or determination of probable cause and the ultimate adjudication have different bases and purposes. The fact that the same agency makes them in tandem and that they relate to the same issues does not result in a procedural due process violation." *Id.* at 58. To summarize: "[T]he combination of investigative and adjudicative functions does not, without more, constitute a due process violation." *Id. See also Gibson v.*

*Berryhill*, 411 U.S. 564, 579 (1973) (explaining that administrative adjudicators "with substantial pecuniary interest in legal proceedings should not adjudicate these disputes").

Simply put, the cases which Johnson relies upon do not stand for the proposition which she advances. Johnson has identified no case which holds that a decisionmaker who exercises both adjudicative and executive functions violates due process *in the absence of a pecuniary interest in the outcome*. Johnson relies almost exclusively upon *Hammond v. Baldwin*, 866 F.2d 172, 177 (1989). In *Hammond*, the Sixth Circuit held that "the entire government of a state cannot be disqualified from decisionmaking on grounds of bias when all that is alleged is a general bias in favor of the alleged state interest or policy." *Id.* In passing, the *Hammond* Court did suggest that bias sufficient to implicate due process may exist when "the decisionmaker was engaged in both adjudicative and executive functions in violation of the principle of separation of powers." *Id.* (citing *Ward v. Village of Monroeville*, 409 U.S. 57 (1972) and *Meyer v. Niles Twp.*, 477 F. Supp. 357 (N.D. Ill. 1979)). But the *Hammond* Court did not affirmatively hold that the union of adjudicative and executive functions is a per se violation of due process. And such an assertion would be inconsistent with both *Withrow* and the cases which the *Hammond* Court cited.

In *Ward*, the Supreme Court confirmed that "'the mere union of the executive power and the judicial power in [a mayor] cannot be said to violate due process of law.'" *Ward*, 409 U.S. at 60 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 534 (1972)). Rather, because the mayor was reviewing appeals of traffic convictions and because the mayor received a portion of the funds levied via traffic convictions, he was not a neutral and detached arbiter. *Id.* The fatal problem was the mayor's pecuniary interest in the convictions he was reviewing. Likewise, in *Meyer*, the district court found that the township supervisors in question had an "interest in protecting

township funds" and thus were not unbiased decisionmakers. 477 F. Supp. at 362. That holding was both reliant on a finding of a pecuniary interest and apparently incompatible with the Sixth Circuit's holding in *Hammond* that an allegation of "a general bias in favor of the alleged state interest or policy" is insufficient to violate due process. 866 F.2d at 177. And, most importantly, the Supreme Court has directly and unequivocally held that the mere union of adjudicative and executive functions in one person does not, without more, violate due process. *Withrow*, 421 U.S. at 58.

In the present motion, Johnson argues that her due process rights will be violated if Morales sits on the appeal panel. But Johnson ignores the fact that Morales will be only one of three members of the panel. Thus, the suspension will (presumably) be reviewed by two independent and neutral arbiters. In other words, the suspension will be upheld only if two neutral adjudicators find that it was appropriate. And, more fundamentally, Johnson has provided no reason to believe that Morales would be unable to fairly and impartially participate on the panel. The Supreme Court has directly held (in the case principally relied upon by Johnson) that due process is not violated simply because a person exercises both executive and adjudicative functions. *Withrow*, 421 U.S. at 58. Rather, additional evidence of bias must be shown. There is no evidence that Morales has a financial interest in the outcome of the hearing and, to this Court's knowledge, Johnson has not personally abused or criticized Morales. This Court begins with the presumption that Morales will honestly and equitably review his decision to suspend Johnson's business license, and that presumption has not been called into question. *Id.* at 47. Even assuming all facts alleged in Johnson's complaint to be true, no due process violation is apparent or imminent. For that reason, Johnson is extremely unlikely to prevail on the merits of her claim, and a temporary restraining order or preliminary injunction is not warranted.

**B.**

Even if Johnson could adequately allege a constitutional violation, preliminary injunctive relief would not be warranted because Johnson has not established that she will suffer irreparable harm in the interim. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). If a movant has established that violation of his or her First Amendment rights is likely, irreparable injury has been established. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("With regard to the factor of irreparable injury, for example, it is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). But when, as here, the movant is alleging that his or her due process rights will be violated, irreparable harm exists only "when there is 'no legal avenue open [...] by which to recoup [ ] financial losses.'" *United States v. Michigan*, 230 F.R.D. 492, 495 (E.D. Mich. 2005) (quoting *Mich. Bell Telephone Co. v. Engler*, 257 F.3d 587, 598 (6th Cir.2001)).

Johnson repeatedly alleges in her complaint that the license suspension and protracted appeals process has resulted in loss of business and income for her. But those allegations epitomize harm that is fully compensable by monetary damages. And although Johnson argues that the appeals process will violate her due process rights, any such violation can be remedied by appeal "to a court of competent jurisdiction" as provided by the City Ordinance. 110.06(E)(4). If the appeal panel rules in her favor, Johnson's due process rights will not have been infringed. If the appeal panel affirms the suspension, Johnson may file suit and obtain

further review. Johnson has identified no risk of irreparable harm that would justify preliminary injunctive relief.[2]

## IV.

Accordingly, it is **ORDERED** that Plaintiff Johnson's amended motion for a temporary restraining order and/or preliminary injunction, ECF No. 7, is **DENIED.**

It is further **ORDERED** that Plaintiff Johnson's original motion for a temporary restraining order and/or preliminary injunction, ECF No. 6, is **DENIED as moot.**

Dated: September 15, 2017

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 15, 2017.

s/Kelly Winslow
KELLY WINSLOW, Case Manager

---

[2] As a final matter, it is questionable whether Johnson has standing to bring this suit. Although exhaustion of state administrative remedies is not required in 42 U.S.C. § 1983 suits, the administrative action must generally be final before it is judicially reviewable. *See Hammond*, 866 F.2d at 175. If the state administrative body has not rendered a final decision, then no actual and concrete injury sufficient to establish standing exists. *Id.* In other words, the case would not yet be ripe for judicial review.

The question of whether finality exists turns on the type of injury alleged: "'If the injury the [plaintiffs] seek to redress is harm to their property amounting to a 'deprivation' in constitutional terms, a final judgment is required; however, if the injury is the infirmity of the process, neither a final judgment nor exhaustion is required.'" *Bowers v. City of Flint*, 325 F.3d 758, 762 (6th Cir. 2003) (quoting *Hammond*, 951 F.2d at 704). Johnson's complaint appears to advance claims of both procedural infirmities and deprivation of property. As described above, Johnson's complaint likely does not state a claim upon which relief can be based regarding the City's allegedly unconstitutional procedures. To the extent Johnson's cognizable claims assert only harm resulting from deprivation of property, this case may not be ripe. Because Johnson's complaint frames purported procedural due process claims, this issue is best left for future resolution (perhaps in a motion to dismiss under Federal Rule of Procedure 12(b)).